### No. 10,414.

### THE STATE OF LOUISIANA VS. ETIENNE DESCHAMPS.

A motion for a continuance, made for the *first* time, by an attorney, assigned to defend an accused in a capital case, ought to be allowed, when supported by his *affidavit*, that he has not had sufficient time to prepare a suitable and valid defense which he *believes* there is in the case, less than forty-eight hours having intervened between his appointment and the calling of the case, which involves questions of fact and law, which require much study and research.

A PPEAL from the Criminal District Court for the Parish of Orleans. *Marr*, J.

---

*Walter H. Rogers,* Attorney General, for the State, Appellee.

---

*James H. Dowling* and *McMahon & Pratt* for Defendant and Appellant.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The defendant was prosecuted for murder, tried, convicted and sentenced to death.

On appeal, he complains that the District Judge erred:

1. In refusing a continuance.
2. In hearing an incompetent witness.
3. In admitting certain testimony.
4. In giving an improper charge.

The record contains three bills and a motion for a new trial to the refusal of which, a bill was taken.

The following is an extract from the statement of the trial Judge, contained in the bill taken to his refusal to grant a continuance.

"On the 29th April, when the accused was brought to the Bar for trial, he informed the Court that he had no counsel and asked the Court to appoint counsel for him, such as the Court might select.

"After positive refusal by some half a dozen members of the Bar the appointment was made and the case was continued to 1st May."

On that day, the counsel thus appointed made *affidavit*, stating "that he is entitled to an indulgence from the Honorable Court, of a reasonable time in which to prepare a suitable and valid defence, which counsel believes there is in this case; that he has not had sufficient time to do so, as less than forty-eight hours have intervened since his assignment as counsel and the calling of the accused to the Bar of the Court for trial; that he has been altogether unable to prepare the case, involving, as it does, the life of a human being, embracing points of law and fact, requiring much study and research, which he has been unable to devote to it."

When the case was called, counsel moved for a continuance, based on the *affidavit* made by him, which was refused by the Court.

For so doing, the trial judge states in the bill taken to his ruling:

"The time allowed, I considered sufficient to enable counsel to ascertain what defence, if any there was, and to obtain from the accused the names of witnesses by whom any exculpatory facts, or matters of defence could be proved, and such information might have been ground for *affidavit* and motion for continuance.

"The counsel for accused in answer to inquiry by the Court said, he would require about a month to prepare suitable defence.

"As the Court will be in vacation from 1st June to 1st September, this simply meant a continuance for four months.

"The accused never in any way intimated to the Court that he had any defence.

" He never mentioned any fact which he expected, or desired to prove ; nor did he ever ask for delay to procure testimony, or to have · witnesses in his behalf, summoned.

" I considered the *affidavit* insufficient, in that, it does not indicate any line of defence. It does not mention any fact to be proven, nor does it ask for delay, to have witnesses summoned on behalf of the accused. On such showing, I did not consider that I would be justified in granting a continuance."

· The question here presented is : Whether, under the showing made by the counsel appointed to the accused, by the Court, a continuance ought or ought not to have been granted.

When arraigned, the accused pleaded *not guilty* and, when called upon to stand his trial on the 29th of April, he announced that he had no counsel and asked that one be appointed to him. The Court at once assigned counsel and continued the case to the day after the next, May 1st.

There is nothing to show when the counsel appointed, was informed or notified of his assignment and when he accepted the same, except his appearance on the day fixed for the trial, when he made the *affidavit* and motion for a continuance.

Supposing, however, that he knew of the appointment and accepted it at the very moment that it was made, it is evident, that a very short time intervened between that of the appointment and that when the case was called for trial, surely less than forty-eight hours.

Now, on that day, 1st May, the counsel, a sworn officer of the Court, in whom the Judge placed reliance, to whom the life of the accused had been entrusted, who had no personal interest to serve, nothing to gain by delaying a trial, makes *affidavit*, that he is entitled to the indulgence of the Court for a reasonable time, in which to prepare a suitable and valid defence, which he *believes* there is in the case ; that he has not had sufficient time to do so, as less than forty-eight hours have intervened ; that he has been altogether unable to prepare the case which involves questions of fact and law, which require much study and research, which he has been unable to devote to it.

The *affidavit* should have been taken for true and, if true, surely was sufficient authority, under the circumstances, to grant a continuance for a *reasonable* time.

No Court can expect from counsel, appointed by it, to defend an accused in a capital case, that they should assume the great responsibility imposed upon them, without being allowed a reasonable time to inquire into the facts and the law,—should they require it,—and no Court

should compel such counsel to proceed with the defence of such a case, under such circumstances, when the counsel, under his solemn oath, declares that *he believes* there is a defence to be made; but that he has not had sufficient time to prepare it, when the time intervening between the time of appointment and that of the trial is less than forty-eight hours.

We have been shown no precedent and we know of none, in which a continuance for a reasonable time, made for the first time in a capital case, under such circumstances, has not been granted

In State vs. Ferris, 16 Ann. 425, which was a murder case, the then Court said in reference to accused in criminal cases :

" The law securing to them the assistance of counsel did not intend to extend a barren right, for of what avail would be the principle of counsel"    *    *    *    if, on the spur of the moment, without an opportunity of studying the case, the former should be compelled to enter upon an investigation of the cause.

In the case of State vs. Horn, 34 Ann. 100, which was a penitentiary case only, counsel appointed to the accused having made *affidavit* that he had not time to prepare a defence and having retired on the overruling of his motion, and the accused having made *affidavit* for the allowance of time to prepare, and the Court having refused a continuance, this Court considered the showing sufficient, quashed the verdict and remanded the case.

In State vs. Boyd, 37 Ann. 781, which was a capital case, the Court had appointed two members of the Bar to defend the accused, allowing them three hours for preparation. At the expiration of that time they made *affidavit* and a motion for further delay, as they had not had sufficient time to prepare the defence.

This Court there held that, in a capital case, under such a showing, the trial judge ought to have allowed time and that the ruling was erroneous.

In State vs. Simpson, 38 Ann. 24, which involved a penitentiary offense only, the Court said, that the right to be heard by counsel, guaranteed by the Constitution to the accused, was not an empty formality, but an inestimable privilege and that counsel should be allowed reasonable time to prepare the defence. It ruled accordingly.

In State vs. Brooks, 39 Ann. 241, in which the penalty was no more than hard labor, this Court, on an *affidavit* of the accused, fortified by that of his counsel, asking for time to prepare, reiterated the language, with approbation, found in the 16th Ann. p. 424.

In all these prosecutions, the verdicts were quashed and the cases remanded.

The rulings in State vs. Wilson, 33 Ann. 261; State vs. Doyle, 36 Ann. 91; in State vs. Johnson, 36 Ann. 852; have no real bearings upon the question under consideration, as the facts are materially dissimilar.

In the Wilson case the affidavit was not made by the appointed attorney. It did not state that there was a valid defence, that the case involved questions of fact and law which required much study and research and that counsel needed a reasonable time to prepare such defence. In the instant case, the *affidavit* is made by the assigned counsel, who distinctly states these special causes for a continuance. The oath of the attorney was entitled to much weight, as he was the best judge of the condition of the case he was called on to defend, of his readiness to do so, as the prosecution was for a capital offence and the application was made for the *first* time, and had not unnecessary delay for its purpose.

In the Boyle case, there was no complaint. The accused had not asked for the appointment of counsel, had not prayed for a continuance owing to the absence of his counsel, and the case had proceeded regularly without the aid of counsel.

In the case of Johnson, the accused had asked a continuance on account of the absence of his counsel, which the Court declined, assigning counsel to him, who did not make *affidavit* that he had not had and required time to prepare, and who invoked every technical defence which legal ingenuity could suggest.

In the instant case, the counsel appointed to defend the accused, made *affidavit* and asked time to prepare, under circumstances and in a form which entitled him and the accused to a reasonable delay and charged injury to the accused in the motion for a new trial.

The reasons assigned by the district judge in justification of his refusal are lengthy. In a portion of his statement, found in the bill of exceptions and which we have not deemed necessary to transcribe, he says substantially, that several counsel appointed by him had either declined to act, or had not been accepted; that others, chosen by the accused, had refused to represent him.

All this may be true, but how does it militate against the motion for a continuance made by the attorney appointed by the court and accepted by the accused?

The reasons given by the trial judge declining the continuance, may be condensed as being:

1. The accused refused to accept counsel appointed to him by the court.

2. The time which had intervened between the last appointment of counsel and that of the motion ·for a continuance, was sufficient to ascertain the defense, *if any,* and to summon witnesses.

3. The accused never intimated that he had any defense, never mentioned any fact which he expected or desired to prove, never asked delay to procure testimony, or to summon witnesses.

4. The *affidavit* does not indicate any line of defense, mentions no fact to be proved, asks no time to have witnesses summoned.

5. The time asked was *one* month.   Allowing that time would have been allowing *four* months.

### I.

The law provides, R. S. 992, "that every person shall be allowed to make his full defense by counsel learned in the law, and the court before whom he shall be tried, shall immediately, upon his request, assign to him such counsel as he shall desire. "

Under this provision, the accused was not bound to accept *any* counsel appointed to him.   He had a right to refuse counsel assigned whom he thought he should not accept, and he was under no obligation to adduce reasons to justify his conduct.   The law makes it the duty of the court " to assign him such counsel as he may request. "

### II.

How would the trial judge know that forty-eight hours or less were sufficient, how could he know that more than forty-eight hours was not necessary to enable counsel to prepare a defense in a case, of the nature of which he could officially *then* have had no knowledge ?

He is not presumed to know, before trial, the facts upon which a prosecution rests or a defense is based.

Whatever knowledge or information he may have acquired on the subject, it is his duty officially to ignore and such knowledge must necessarily before the trial be imperfect, as it is only after trial that the facts may be considered as developed.

How could he know what points of law could be raised, either by the prosecution or by the accused, and what degree or extent of research and study was necessary for a proper vindication of the constitutional rights of the accused ?

From an expression which has escaped the trial judge, it would seem that he momentarily lost sight of the presumption of innocence in favor

of an accused, before trial, for he says, that the time allowed was sufficient to enable the counsel to ascertain what defense, *if any*, there was.
. An accused who has pleaded *not guilty* has always a defense to make and rights to vindicate, not only to repel the charges against him, but also, however guilty he may be in fact, to have himself tried in the manner and form prescribed and required by law, particularly in capital cases.

Of course, if the accused could be presumed conclusively to be guilty and was so, he could not have established his innocence, and the assigned attorney would not have needed and could not have required any time to prepare the defense, but on the contrary, if the accused was to be presumed innocent he could have urged a defense and surely in a prosecution of such gravity,—less than forty-eight hours would have been too short a delay for the newly appointed counsel to ascertain the facts and prepare the law, the more so if such counsel be an utter stranger to the accused, whose language he did not speak, and had been recently admitted to the bar, and therefore was not experienced in the defense of capital cases.

It is worthy of notice that in the motion for a new trial, the appointed attorney reiterated that he had not had time to prepare, that he had had no opportunity of properly conferring with the accused, not even understanding his language, that improper evidence had been admitted, that an important erroneous charge had been given by the court operating to the prejudice and injury of the accused.

It is palpable from all the circumstances of the case, that the complaint of the assigned counsel that he has not had and needed further time to prepare, is well founded and that his motion for delay made for the first time ought to have been favorably considered.

### III.

It was not necessary that the accused should intimate his defense or mention his witnesses to the judge or to any one else. It is a possibility that he may have had a defense which he intended to set up suddenly, to the surprise and defeat of the prosecution, or that his witnesses, if any he had, would be present in court without being summoned, and that he would have had something to make, by such a course.

He is entitled for his defense to all the means which the law does not forbid, or which it allows him, and no one has a right to inquire into them unless when he intends to procure wanting evidence or testimony which he had secured and of which circumstances would deprive him otherwise.

### IV.

Neither the counsel, nor the accused, was bound to divulge a line of defense. Surely, the counsel, if so bound, could not have done so, without having had sufficient time to inquire and without having ascertained the same.

### V.

It does not follow that, because counsel asked *one* month to prepare the defense, that the court was bound to allow *that* time and still less *four* months.

The court might have allowed less than one month, or might have allowed more if necessary. The happening of the coming vacation term to which allusion is made would not have closed the division of the court before which the accused had been for trial. The act of 1880 (No. 98, sec. 7) does not force an adjournment. It leaves it discretionary with the judges of the Criminal District Court for the Parish of Orleans to arrange between themselves, so as to suit their convenience; but in so doing, the law expects that the judges shall keep in view, due regard to a proper and speedy administration of criminal justice.

We, therefore, conclude that, as the trial judge has not exercised a just legal discretion in declining to allow further time, and as the accused was thus unduly denied an important privilege, a great right and the full justice, to which he was entitled, the bill of exception was well taken and the complaint on appeal is well found.

This view of the case dispenses us from the necessity of considering the other points, or matters to which our attention has been called by the assigned counsel.

In ruling as we have done, far has been from our mind, any intention, in the least to reflect on the character and motives of the trial judge, which are above all suspicion, as we hold him in great respect. We only rule that, in an extreme desire to vindicate the public law, he has erred in not sufficiently safeguarding the rights of the accused.

It is, therefore, ordered and decreed that the verdict of the jury be quashed, that the judgment and sentence thereon be annulled and reversed, and that this cause be remanded to the lower court for further proceedings according to law.

---

### DISSENTING OPINION.

McEnery, J. The defendant was indicted on February 18, 1889. On the 23d February, the court appointed Charles J. Theard to defend the accused. The accused had made an application for the appointment

of an attorney. Mr. Theard declined the appointment. The accused was then on the 23d February arraigned, and remanded to await farther proceedings. On the 27th February an able and experienced lawyer in criminal trials was appointed by the court to represent the accused. He declined the services of the attorney without assigning any reasons therefor.

On the 27th February the following appears upon the minutes of the court:

" The court having appointed Charles J. Theard, Esq., as counsel to represent the accused and the appointment having been declined the court has this day appointed H. C. Castellanos, Esq., to represent the said accused. The appointment being accepted in person by the appointed."

On the 18th day of April the defendant was ordered to appear for trial on the 29th day of April. On the 20th of April this notice was served on the defendant.

On the 29th of April the accused again made application to the court for the appointment of counsel, and the court appointed James. H. Dowling, Esq. The case was continued on his motion until Wednesday, May 1st 1889.

On May the first, the attorney, James H. Dowling, filed a motion for a continuance. The cause assigned in the affidavit and motion for a continuance is as follows : " That he is entitled to an indulgence from this Honorable Court of a reasonable time in which to prepare a suitable and valid defence, which counsel believes there is in this case, that he has not had sufficient time to do so,. or less than forty-eight hours have intervened since his assignment as counsel and the calling of the accused to the bar of the court for trial, that he has been altogether unable to prepare the case, involving as it does the life of a human being embracing points of law and fact requiring much study and research, which he has been unable to devote to it."

This motion was addressed to the sound discretion of the court, which should not be interfered with, unless there has been an improper and unjust abuse of such discretion in his rulings. Wharton Criminal Law 3037 ; 33 Ann. 262 ; 36 Ann. 853 ; 37 Ann. 128 ; 39 Ann. 673.

The learned District Judge in giving his reasons for denying the continuance says :

" On the 23d February, 1889, Etienne Deschamps was brought into court and was arraigned and pleaded not guilty. On the same day at his request and upon his affidavit of want of means to employ counsel the court appointed a member of the bar in every way competent, and

he, under date 26th February, 1889, informed the court that he declined the appointment. Therefore, I, the judge, put myself into communication successively with quite a number of the members of the bar, all of whom declined to accept the appointment.

"In the meantime I was informed, and it was generally understood, that the accused was in communication with a distinguished member of the bar who would probably be employed by the accused. On the 18th April the gentleman stated to the District Attorney, who immediately informed me, that he would not undertake the case. Therefore on the same day I ordered that a copy of the indictment and of the jury list and notice that the trial was fixed for Monday, the 29th of April. I obtained the consent of one of the oldest members of the bar, a lawyer of large experience and of great ability in criminal cases, to undertake the defence, and notice of trial issued on the 20th April was served on him the 22d April. The accused refused to accept the services of this gentleman and thereupon I had the accused brought into court, the gentleman who had consented to defend him being also present in the court room. The accused there in open court refused to accept the services of this gentleman and requested the court to appoint another selected by himself, whose name he gave. This gentleman, a prominent member of the bar, was sent for and he asked for time to visit the accused and determine whether or not he would accept the appointment. On the 23d April he declined to take the case, and Wednesday, 24th April, I sent the chief deputy sheriff to tell the accused if he would furnish the names of witnesses I would see that they were brought into court on the trial. The answer returned to me was that he had no witnesses and it was reported in court on the day of trial that he had no witnesses.

"On the 29th April when the accused was brought to the bar for trial, he informed the court that he had no counsel and asked the court to appoint counsel for him, such as the court might select. After positive refusal by some half dozen members of the bar, the appointment was made and the case continued to 1st May. The time I allowed I considered sufficient to enable the counsel to ascertain what defence, if any, there was and to obtain from the accused the names of witnesses by whom any exculpating facts or matters of defence could be proved; and such information might have been grounds for continuance.

"The counsel for accused in answer to inquiry by the court said he would require about a month to prepare suitable defence. As the court will be in vacation from 1st June to 1st September, this simply meant a continuance for four months.

" The accused never in any way indicated to the court that he had any defence. He never mentioned any fact which he expected or desired to prove, nor did he ever ask for delay to procure testimony or to have witnesses in his behalf summoned. I consider the affidavit insufficient in that it does not indicate any line of defence. It does not mention any fact to be proven, nor does it ask for delay to have witnesses summoned in behalf of the accused. On such showing I did not consider that I would be justified in granting a continuance."

As a general rule error does not lie to the action of the court on a motion for a continuance, which is in the discretion of the court, though when a bill of exception is taken, the decision in a strong case may be reviewed. Wharton Criminal Law § 3037.

This court has guarded this discretion in such matters, and its expressions on the subject have been emphatic. Thus, in one case we said : " The legal discretion of the trial judge in a criminal case, in matters of continuance will not be interfered with, unless the ruling complained of is glaringly erroneous and manifestly unjust." State vs. Johnson, 36 Ann. 853.

In the case of State vs. Clark, 37 Ann. 128, we said : " Continuances are peculiarly within the legal discretion of the trial judge in criminal cases. Refusals to grant them will not be interfered with, unless in cases of flagrant error or gross abuse of power." State vs. Clark, 37 Ann. 128.

In a case similar to the one at bar the facts are stated in the opinion as follows :

" An attorney was appointed on the 14th to defend him and the case was fixed for the 16th following. On that day a motion was filed for a continuance on the grounds stated, viz. : that the counsel appointed by the court had not sufficient time to prepare his defence, supported by affidavit, but it was overruled. It stated no special cause for delay. The attorney does not appear to have been shocked at the ruling. He did not resign his trust, but proceeded with the trial of the case and gave the accused his able and generous assistance. After a verdict of guilty a motion was made for a new trial, but no attempt appears to have been made to show that by the refusal of the judge to continue the case the prisoner had sustained any injury, and that the judge should have granted the postponement of the case. The motion charged besides that the verdict was contrary to law and evidence."

This case is similar in every respect to the instant case, the only difference being in those features of the latter which are less favorable to the defendant.

In this case we said: "It is left to the sound discretion of a district judge in such cases to determine what time should be allowed counsel appointed by him to represent the accused in order to prepare his defence, 16 Ann. 425. And also to pass upon application for a continuance on the day of trial, 23 Ann. 569, as well as upon motion for a new trial. Unless it be shown that some special and sufficient reason was assigned and made good in support of an application for a continuance, and that the district judge acted arbitrarily, and was guilty of a denial of justice, his rulings in two instances, the one offering the other at different stages, particularly when the last was made on a motion after a verdict, will not be reversed on appeal." State vs. Wilson, 33 Ann. 262.

In the case of the State vs. Berry Johnson, 36 Ann., p. 853, " it appears where he (accused) was arraigned, one week previous to his trial the court offered to assign counsel for his defense. The offer was declined for the reason that he had secured counsel of his own. On the day of trial he informed the court that his counsel had abandoned him, and he therefore prayed for a continuance on that ground. Whereupon the court having assigned him counsel who now represents him, refused the continuance, but allowed two hours' delay to the attorney thus appointed. "

In this case the court said: "Our jurisprudence has finaly settled the rule that this court will not interfere with the legal discretion of the trial judge unless gross injustice has been done to the accused. The defendant chose to rely on his own selection of counsel and other than to accept the guidance of the court, and he must abide the consequences. "

In the instant case the accused had ample time to prepare for his defense; to consult with counsel and communicate to him his defense, had he accepted the services of the able and experienced attorney appointed to represent him by the court. No reason is assigned for declining the services of this attorney. While the Constitution of the State guarantees to every accused party the right to be heard by counsel, and in furtherance of the provision the statute law directs the judge to appoint counsel learned in the law to represent him when he is unable to employ one, there is no law absolutely requiring him to be heard by counsel. It is his privilege to go to trial without an attorney, and to decline to accept the services of counsel tendered him, and he must abide the consequences of such refusal. The District Judge, it seems, in this case exhausted all the resources he possessed in the interests of the accused. Nothing else, in the administration of justice and a sense of duty to society and the State could have been done.

After having declined the services of counsel appointed by the court, he was notified of the day fixed for his trial, and was requested by the judge to furnish the names of witnesses whom he desired to have summoned on his behalf. He replied he had none. On the 29th of April an attorney was appointed by the court at the request of the accused, and on his motion the case was continued until the 1st of May, when he asked for a further continuance for the reasons alleged in the motion. In this motion it is not even suggested that the accused had any defense, or that he had any witnesses to summon. The only reason is that the attorney desired time to prepare a defence for his client. On the trial, after the State had concluded her evidence, the accused retired with his attorney for consultation, and announced on the return to the courtroom that the accused had no testimony to offer.

That this is a capital case can make no difference in the rulings of the court to distinguish it from cases of a lower grade in the list of crimes. There is no law requiring the trial judge to view with more favor application for continuance in capital cases than those made for offenses punishable at hard labor.

Under the facts in this case the action of the trial judge in refusing a continuance does not seem to have been " glaringly erroneous; manifestly unjust;" "a flagrant error or gross abuse of powers." On the contrary, the district judge was anxious and solicitous in the defense of the accused, and was zealous in his efforts to secure for him the services of learned and experienced counsel.

For these reasons, I respectfully dissent from the opinion of the majority of the court.

Fenner, J., concurs in this opinion.

## On Application for Rehearing.

Watkins, J. This application is made on the part of the Attorney General, and the *gravamen* of his complaint is contained in the two following extracts we have selected from his brief, viz.:

1. " It will be very difficult in the execution of criminal justice, to meet the many devices and attempts at delay—if the facts of the present case justify the ruling just pronounced. If *only* forty-eight hours had been granted counsel for the accused and a longer time refused, some rule of conduct as controlling the trial judge's discretion might be adopted, and if the opinion of the court was unanimous as to facts, a rule of practice might be held adopted."

2. " If the facts of this case could have been considered by the whole court as fixing the time and seasonableness of the application and appointment of counsel, the matter could have rested, but I respectfully submit, that as the opinions now stand, there is so much of divergence and conflict, that I pray the court to reconsider."

Intervening between these paragraphs the Attorney General is pleased to indulge in some animadversions upon the disparity existing between the statement of fact contained in the opinion of the *court*, and the statement of dissenting justices, in respect to the date of the appointment of counsel by the trial judge, to represent the accused, and he concludes them by saying :

" It will be impossible to establish any rule, in this regard, if we are to follow this case, and its facts, as a precedent."

In purport, the Attorney General has tendered the proposition for our consideration, that the opinion of this court does not establish " a rule of practice," because the court is not " unanimous as to facts," and because " as the *opinions* now stand, there is so much divergence and conflict," we ought to reconsider the case.   (The word " opinions " was italicised by us.)

There seems to be a notion prevalent that expressions of opinion by a majority of the court, constitute, in some sort, a decree in respect to the *facts* of a case, that carry with them the force of authority.   For the information of those who entertain such a notion, it is sufficient to say that, however much consideration may be due to the views of dissenting justices, the opinion of the court, as expressed by the majority, *only*, is authoritative in the enunciation of facts, as well as of legal principles, in any given case.   Such is the plain and emphatic meaning of that provision of the Constitution, which says, " no judgment shall be rendered by the Supreme Court, without the concurrence of three judges."

There cannot be, in the very nature of things, two opinions of this court, unless they *concur*.

The substance of the motion for a rehearing is, that, because of the disagreement in reference to certain facts, the opinion, as it stands, is not a *safe* guide for the law officers of the State, " in the execution of criminal justice."

The views entertained and expressed by our predecessors, on an application for a rehearing in Folkes vs. Howis, 11 Ann. 448, strike us as being so peculiarly applicable, that we quote from them *in extenso*, as a fitting answer to the one on hand.

State vs. Deschamps.

Said Merrick, Chief Justice, as the organ of the court :

" We find in the application for a rehearing in this case the following passage: * * * We respectfully refer the majority of the court to the opinion of Judge Spofford in connection with what we hastily suggest. We will not say that that opinion is unanswerable; although, in our humble opinion, no answer suggests itself. But we submit, that the opinion should be refuted, or should control the decision of this case, in the interest of the jurisprudence of our State. * * * *

" The high standing of the gentlemen who have applied for a rehearing in this case, requires of us some notice of the petition for a rehearing so extraordinary in its tone. We have hitherto supposed that we had discharged our duty when we had respectfully considered each other's opinions, and decided each individual case, upon the reasons applicable to it. We are not aware that we owed to counsel, or the public, the duty of combatting the opinion of the judge who might be unable to concur with the majority in opinion; neither had we surmised the way, or learned precisely, how we were to be informed, and on what occasions it would be necessary and proper to vindicate any particular decision of this court. We thought that, in the case before us, all that was required of either the minority, or the majority of the court was, that the case should be so decided, that injustice should not be done under the law, to one party or the other. * * * * * * * *

"·The minority of the court have entertained, and, with marked ability expressed different views, which are entitled to the same respect, although not decisive of the matters in controversy, as the opinion of this court, and no more. Neither the opinion of the majority nor minority, was written to catch the approbation of this or that man (motives unworthy of any judicial tribunal whose sole object should be to do justice in each case, according to the laws of the land.)

" Nor can it be permitted to any one, how respectable soever his standing may be, so far to forget his official intercourse with this tribunal, what is due to it, as to point out, under the pretense of interest in its jurisprudence, what particular opinions are worthy of favor, and what need to be vindicated by the court. "

Comment would add nothing to the force of those conclusions, and we will conclude by expressing the view that was expressed by the majority of that court: "Justice has been done. "

Rehearing refused.

Mr. Justice Fenner dissents.