BREAUX, C. J.
The defendant was indicted on the charge of having sold, retailed, and bartered spirituous and intoxicating liquors without the required license.
1-Ie was tried and found guilty. 1-Ie was sentenced to pay a fine of $305, and to pay the costs of prosecution and to confinement in the parish jail, subject to work on the public roads of the parish as provided by law for a period of three months, and in default of payment of the fine and costs to be confined to the parish jail subject to work on the public roads of the parish for an additional period of three months.
[1] His first complaint on this appeal is that he was entitled to a continuance, which the trial court refused to grapt.
He represented, in substance, in his motion for a continuance, that he had retained a leading attorney to take charge of his defense, and that no other attorney had knowledge of the facts of Ms defense, and that he alone, in whom he had the utmost confidence, had charge; that about half an hour before his case was called for trial he was informed of the serious illness of Ms counsel, and stated to the court that he on account of the absence of his counsel was not prepared for the trial, and urged that there were legal complications that would arise during the trial, and that he depended exclusively upon his counsel, who was not in partnership with any other counsel at the time he was employed, and that the young attorney, who subsequently was employed, because he subsequently became the partner of his regularly employed attorney, did not have the required experience' in the trial of criminal cases to enable him to thoroughly and properly conduct his defense.
For these reasons, he asked for a continuance, or that he have a short postponement until leading counsel is able to take charge of Ms defense.
The application was refused and a half hour’s delay granted to enable defendant to consult counsel.
In his motion for a continuance, supported by his affidavit, defendant avers: That G. W. Elam was his counsel in the case and for about two years was in charge of his defense as leading counsel. That S. M. Atkinson had been investigating the case to the end of *557 developing certain facts, but that he acted under the guidance and direction <of O. W. Elam.
That about half an hour before his case was called he was informed of the serious illness of his counsel, who was in bed. That he was not prepared for his trial owing to the absence of his leading counsel, G. W. Elam. That he was denied representation by counsel of his own choice. That he had his case well in hand, while other attorneys were not thoroughly informed. That the leading counsel understood his defense. That he was taken by surprise.
The narrative of the judge, made part of the bill of exceptions, states that the court overruled the motion and forced defendant to trial for the following reasons: That the eases were fixed for Friday, September 19th, and on that day all the witnesses were present; the accused employed the firm of Lee, Hardin & Atkinson, and all three members of the firm, together with Lee, Elam’s partner, were present as retained counsel for the accused; that, the charge being only misdemeanor, the motion was overruled.
It remains that O. W. Elam was absent, ill, and that he was the leading counsel; this is not questioned.
Under the circumstances, half an hour was a short time. The case was tried before the judge, who might have granted further delay without delaying or dogging or obstructing the trial of cases.
The position of learned counsel for defendant is that Elam and Lee “alone wore attorneys of record at the time of the assignment ; that there is nothing in the record to show that defendant had any other counsel up to the date of the trial, nor had he.”
Mr. E. P. Lee had never talked to defendant or one of his witnesses.
The record shows that Mr. Elam was ill and unable to attend court.
That “Lee, Hardin & Atkinson knew nothing of the case and had never participated in a single discussion and were called into the case as the defendant was being forced to trial.
It was then that a motion for a new trial was made. It was said that Judge Sutherlin, of Shreveport, a brother-in-law of Mr. Elam, happened to be in Mansfield and volunteered to do what he could.
That the prosecution for misdemeanor, although true (it was for selling liquor), is of more serious character than prosecution for graver offenses. That he was sentenced in three cases to work on the parish roads for nine months with a fine of $915 in addition.
Under the circumstances, we are of the opinion that another hearing should be granted.
We will not quote the strong language used in representing the necessity for able, energetic, and thorough defense.
It is very seldom that continuances are interfered with.
It is very seldom that an accused is forced to go to trial in the absence of leading counsel.
Each member of this court has given the question special consideration.
A short, reasonable delay, under the circumstances, should have been granted.
'That was substantially the view taken in State v. Deschamps, 41 La. Ann. 1054, 7 South. 133; State v. Simpson, 38 La. Ann. 24.
In conclusion of this point, we quote from the last decision cited above:
“It would be a barren right if the counsel were not allowed a reasonable time to prepare for the defense.”
A review of the entire record satisfies us that the prosecution was characterized by undue haste scarcely compatible with the guarantee of a fair and impartial trial.
[2] The second proposition relates to the admissibility of evidence to prove sales by *559 W. B. Payton & 'Co. for the purpose of proving that the defendant was a partner of W. B. Payton & Co. True, the indictment charges the defendant with the alleged wrong committed. The evidence tendered, we are informed, related to the commercial firm, to which, it is said, defendant’s name does not appear. The complaint is that the burden was thrown on the defendant to prove that an unnamed firm, not alluded to in the indictment, was not guilty, and in the second place that he is not a member of the firm. The objection was that the indictment charged defendant himself with having sold the whisky, and, that, as there was no reference to the firm of W. B. Payton & Co. in the indictment and no averment that defendant was a member of the firm, there was a fatal variance between the allegations of the indictment and the proof tendered. The situation was, as contended by defendant, one of vagueness and indefiniteness, not susceptible of proof, particularly as the state sought to prove that a sale had been made by some one other than the defendant himself in its endeavor to convict the defendant. ,
The following is the summary of the trial judge:
There is no statute or theory of law under which W. B. Payton & Go. as an entity or company could be prosecuted; the individual members only can be reached. The bill of indictment sets forth a cause of action and complies with the action. No bill of particulars has been called for. Unless there is evidence to connect the accused with W. B. Payton & Go., the evidence is not damaging to the accused. And if the firm of W. B. Payton & Co. sold the whisky, and the accused as a member of the firm had knowledge of such sale, it was permissible to show, if the state could, that the accused was a member of the firm.
Defendant’s position is that he was not placed on his guard and his defense because of the vagueness and indefiniteness of the allegations of the indictment.
The indictment was drawn m the words of the law. They were literally followed.
In a number of decisions it has been held that it is sufficient to charge a crime in the language of the law.
Defendant must be held to have known, when called upon to answer to the indictment, that he was charged with an offense committed by his firm with his knowledge and consent. Under well-established rule, witness could be asked whether or not he was a member of the firm and consented to the sale of intoxicating drinks. The objection is not sound in law.
[3] The third and last proposition is that the court was without power to sentence the defendant to imprisonment and work on the public roads except as a secondary or alternative punishment for failure to pay the fine imposed under Act 83 of 1S86, as amended by Act 66 of 1902.
It is urged by learned counsel in behalf of their client that the court’s power is limited to a fine as a primary or initial punishment. In default of the payment of the fine, accused may be fined an additional sum and imprisoned, as the court may deem proper.
The question is not now res nova. Recently we have had to consider it thoroughly. After considerable discussion and mature deliberation, the court arrived at the conclusion that the law is not subject to the attack made in this case. Recalling the discussion, our conclusion is unchanged, and we feel constrained to adhere to our opinion in the former decision — the Charpentier Case.
Eor reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed; that the case be remanded to be tried in accordance with the views herein expressed.
PRO YO STY, X, being absent on account of illness, takes no part.