EDWARDS *v.* STATE.

Opinion delivered November 11, 1929.

*Partain & Agee,* for appellants.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

McHANEY, J. Appellants, who are brothers, were separately indicted, charged with assault with intent to kill one Marion King by shooting him with a pistol. The indictment against Lee Edwards contained a second count, charging him with accessory before the fact to assault with intent to kill the same person. On a joint trial by consent, Galvin was convicted of aggravated assault and sentenced to pay a fine of $500 and one day in jail. Lee was convicted of "accessory to aggravated assault," and sentenced to pay a fine of $100 and one day in jail.

For a reversal appellants urge the following errors:

1. That the court erred in overruling their motion for a continuance on account of the absence of two witnesses, Harrison Sanders and Troy Boyd, who, only a day or two before the return of the indictments, had left

their homes at Piney, Arkansas, and gone to Oklahoma. The indictments were returned on July 2. Sanders left June 30 and Boyd on July 2. The subpoenas were issued on July 5, and an effort to serve them on the 9th disclosed their absence. The motion is in statutory form, but we do not think the court committed reversible error in refusing the continuance. The general rule, as announced by this court in many cases, is that continuances in both civil and criminal cases are addressed to the sound discretion of the trial court, and that this court will not reverse a case on such ground unless it clearly appears that the court has abused its discretion, and that such refusal manifestly operates as a denial of justice. *Allison* v. *State,* 74 Ark. 444, 86 S. W. 409; *Wood* v. *State,* 159 Ark. 671, 252 S. W. 897; *Eddy* v. *State,* 165 Ark. 289, 264 S. W. 832. There has been no denial of justice in this case. It is not shown, except in the unsupported motion of appellants, that these witnesses could have been served for the next term of court, as no evidence was offered or received as to why they were gone or when they would return. We do not review the evidence it is alleged Sanders would give, or that of Boyd, as it would serve no useful purpose. The court did not err in overruling the motion.

2. It is next said the court erred in refusing to permit Lee Edwards to detail a difficulty between King and Harrison Sanders which occurred some days before Galvin shot King. This testimony was irrelevant to the matter before the court, and was properly excluded.

3. Instructions 7 and 8, of which appellants complain, are as follows:

"Gentlemen of the jury, if you find from the testimony in this case that the defendant, Lee Edwards, stood by, aided and consented to his brother, Galvin Edwards, to assault the prosecuting witness, Marion King, with a deadly weapon, with intent to kill, he would be guilty the same as if he had committed the crime himself.

"If you find that he advised and encouraged Galvin Edwards to make an assault upon the prosecuting wit-

ness, Marion King, with the intent to take his life, he would be guilty as if he had committed it himself.''

It is said they assume the guilt of Galvin Edwards, and omit the right to act in necessary self-defense. No specific objection was made to these instructions on these or any other grounds. As to the omission of the self-defense plea, the next instruction fully covers the subject, and we do not think the jury could have been misled on either proposition. If appellants had thought the instructions assumed the guilt of Galvin, they should have specifically objected on this ground, and the court might have so worded it to eliminate the objection.

4. It is finally insisted there should have been a directed verdict for Lee Edwards. We cannot agree with this contention. Taking the evidence in its most favorable light to the State, we cannot say there is no substantial evidence to support the verdict. It shows that appellants were driving toward town in their car, and met King in a wagon; that Galvin told King to get out, that he, King, had been mistreating his brother Lee; that Galvin got out of the car, and shot him twice; that Lee said: ''Don't shoot the son of a bitch any more. You have done killed him, I guess.'' Lee, who is small and deformed, had a row with King that morning, and the jury was justified in finding that he had reported the trouble to Galvin, and that the two of them got in the car to hunt him down and shoot him. We cannot say therefore that the verdict as to Lee was without any substantial evidence to support it.

No error appearing, the judgments are affirmed.