### BIRMINGHAM *v.* STATE.

Opinion delivered September 28, 1936.

*Dene H. Coleman* and *Chas. F. Cole*, for appellant.

*Carl E. Bailey*, Attorney General, and *Guy E. Williams*, Assistant, for appellee.

BUTLER, J. The appellant was tried and convicted for the crime of larceny and on appeal, as ground for reversal of the judgment, he insists that the trial court

erred in refusing to grant him a continuance or post-ponement of the trial and, also, that the evidence is insufficient to support a conviction.

To support the first contention, appellant calls attention to the fact that he was placed on trial on April 16, 1936, two days after he had been arrested during which time he was confined in jail and without opportunity to discuss his case with his attorney, and that the attorney, when the ·case was called, had had no opportunity to talk with the witnesses. In the motion for continuance, filed by the Honorable Dene H. Coleman, these facts were alleged, and further, that the attorney was not advised whether the defense witnesses were present and praying that if, upon the call of said witnesses, any of the material witnesses were not present, the defendant be given an opportunity to confer with his attorney and prepare proper motion for continuance for want of the testimony of such absent witnesses. The record is silent as to the disposition of this motion, but it is stated in the appellant's brief that the motion was overruled. Whether or not exceptions were saved to the alleged action of the court we are not advised.

This court has always been reluctant to interfere with the discretion of the trial court in matters relating to continuances. A presiding judge, from personal observation, is familiar with the attendant circumstances and has the best opportunity to form a correct opinion upon the case presented, and is presumed to have in mind his duty to properly protect the interests of the accused as well as the rights of society. In reviewing his action, there is much to be considered—the imminence of an adjournment of the court, the length of time which will elapse before the court will sit again, the number of witnesses in attendance, the reluctance of defendants to submit to trial, and the shifts often employed to escape or delay justice. Therefore to be reversible error, the refusal to grant continuance must be a palpable error without the correction of which manifest injustice will be done. As is said in *Loftin* v. *State*, 41 Ark. 153: "It must be a flagrant instance of arbitrary or capricious

exercise of power by the circuit court, operating to the denial of justice, that will induce us to interfere.''

Although it might have been that the trial court could have consistently granted the continuance, we are unwilling to say that his refusal to do so was an arbitrary or capricious exercise of his power. The appellant was accused of having stolen six hogs, the property of A. P. Kennedy, and although he was not indicted for the theft until the April term, 1936, of the Independence circuit court, the larceny had been discovered and he had been arrested as the guilty person early in the preceding December. From the circumstances preceding and attendant upon appellant's arrest, it must have been reasonably certain that he would be prosecuted for the alleged larceny and he had ample opportunity to employ and confer with an attorney of his choice and make preparation for his defense. Notwithstanding the fact that Mr. Coleman had withdrawn from the case, appellant was in fact represented by counsel who appear to have ably presented his case. He had procured subpoenas to be issued on April 14 for his witnesses, all of whom appear to have been served except two who could not be found. No suggestion was made that these absent witnesses were material or that the facts within their knowledge could not be established by others who were present. In so far as we are advised, all the witnesses except these two were present. Some testified, who, if believed by the jury, would have established appellant's complete innocence as this testimony was to the effect that they knew of their own knowledge that the hogs which the appellant was accused of stealing were in fact his own. We are of the opinion therefore that the refusal to grant a continuance, was not error, such as to call for reversal of the case.

The contention that the evidence was insufficient is based on the testimony of Kennedy who had lost the six hogs which appellant was accused of stealing. In searching for his hogs, Kennedy found the heads of six hogs in appellant's smokehouse. He stated that they looked like his hogs, but that he could not be positive.

It is argued that this was a failure to sufficiently identify the hogs since the appellant had testified that the heads were from hogs that he, himself, had raised and that this testimony was corroborated by the positive testimony of two other witnesses. Of course, if the jury had believed the testimony of appellant and his witnesses, he would have been acquitted, but there were circumstances in proof tending strongly to negative this testimony and raising a question of fact as to the ownership of the hogs. Kennedy owned six hogs, five of which were red and one yellow or reddish yellow. These ranged in a bottom and with them a sow belonging to Albert Stair, a neighbor. They were fed at frequent intervals by their owners and were last seen and fed on the third of December. On December 5th Kennedy went to the range for the purpose of putting his hogs in a corn field, and found them and the sow missing. In searching for the hogs, the sow was found near appellant's house a mile and a half or two miles from where the hogs ranged. Learning that appellant had killed some hogs about the time his hogs were missing from the range, Kennedy, accompanied by Stair, went to appellant's home and found in his smokehouse six freshly cleaned hogs' heads and a quantity of meat. From the hair left on these heads it was ascertained they were of the same color as the hogs which had disappeared, and apparently of the same size and weight. Four of the red hogs belonging to Kennedy were estimated to weigh about 150 pounds each, the yellow hog about 135 pounds, and one red hog about 100 pounds. On the six heads sufficient hair was found to indicate their color and they apparently corresponded to the size and weight of Kennedy's hogs, but could not be identified by the ear marks as the ears had been cut off even with the head. It was further in testimony that appellant had stated, about two months before, that he had no hogs which would be large enough to kill and that he would not be able to have any meat. There was also evidence to the effect that such hogs as appellant had were much smaller than those which he had killed. While there is no direct

testimony as to the ownership of the hogs found in appellant's smokehouse, we think the circumstances in proof sufficiently cogent to sustain the verdict of the jury.

Judgment affirmed.

JOHNSON, C. J., dissents.

JOHNSON, C. J. (dissenting). I cannot persuade myself that this case should be affirmed. Appellant was arrested on April 14, 1936, and on failure to make bail was incarcerated in the county jail. Immediately after arrest he communicated with Mr. Coleman and employed him as attorney to defend his case. Mr. Coleman was busily engaged in the trial of other cases in the circuit court on the 14th and 15th of April. On April 16 appellant's case was called to trial and Mr. Coleman apprised the court of his recent employment and that he had had no time or opportunity to discuss the facts of appellant's case with him or with the witnesses; and that he had had no time or opportunity to investigate the law in reference thereto. Mr. Coleman requested the court to postpone the case for a few days or continue it for the term and thereby give him reasonable opportunity to make necessary investigation. The trial court refused to either postpone the case for a few days or continue the case for the term and thereupon Mr. Coleman withdrew from the case as attorney. Then the court of its own motion appointed two other attorneys to defend appellant with the result here appealed from. I concede that it is the established rule in this state that the postponement of a case for a few days or a few hours rests in the sound discretion of the trial court and that this court will not reverse a case unless it is made to appear that the trial court has abused its discretion; but, as I perceive, such is the showing here made. My experience of more than 25 years in the law has convinced me that the appointment or employment of counsel, however capable they may be, is futile unless they have a reasonable time to consult with the client, study the case, and inquire into the law and the facts and circumstances surrounding it and be thereby afforded an opportunity to be of

some service to the client or person whose rights such attorney undertakes to protect and defend. Courts of great learning have expressed similar views. See *Samuals* v. *Commonwealth*, 154 Ky. 758, 159 S. W. 575; *Reliford* v. *State*, 140 Georgia 777, 79 S. E. 1128; *North* v. *People*, 139 Ill. 81, 28 N. E. 966; *State* v. *Deschamps*, 41 La. Ann. 1051, 7 So. 133; *State* v. *Lewis*, 74 Mo. 222; *Miller* v. *U. S.*, 8 Okla. 351, 57 Pac. 836; *Commonwealth* v. *Delero*, 218 Pa. 487, 67 Atl. 764; *Reg.* v. *Taylor*, 11 Cox. C. C. 340. The denial of such right is reversible error, see cases cited *supra*, also 16 C. J. 483. Moreover, all the cases point out that the fact that the employed counsel is engaged in other business before the same court during the period of delay and that the accused is confined in jail during the period aggravate rather than ameliorate the rigor of the rule.

The idea seems to prevail in some of the courts of this state that the guarantee of "a speedy and public trial" to an accused as provided in § 10 of art. 2 of the Constitution of 1874, affords authority to the state to demand immediate trials in criminal cases irrespective of the rights of the accused. Obviously this provision of the declaration of rights is for the benefit of the accused and not the state.

I respectfully register my dissent.