Slinkard *v.* State.

4-4021

Opinion delivered March 8, 1937.

*Earl Blansett* and *W. N. Ivie,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

Butler, J. The appellant was tried and convicted in the Benton circuit court of the offense of receiving stolen property and his punishment fixed at imprison-

ment in the penitentiary for a period of one year. From the judgment of conviction he prosecutes this appeal and contends, first, that the trial court erred in overruling his demurrer to the indictment which he had duly interposed in apt time. Omitting the caption, the indictment is as follows:

"The Grand Jury of Benton county, in the name and by the authority of the state of Arkansas accuse L. A. Slinkard of the crime of receiving stolen property committed as follows, to-wit:

"The said L. A. Slinkard in the said county of Benton and state of Arkansas on the 29th day of April, 1936, did unlawfully, wilfully, and feloniously have and keep and receive into his possession two hogs, property of Lonzo Hegwood, knowing at the time that then and there said hogs had lately before been stolen, taken, and carried away with the unlawful, wilful, and felonious intent to deprive the true owner of his property aforesaid, against the peace and dignity of the state of Arkansas."

Section 2493 of Crawford & Moses' Digest provides: "Whoever shall receive or buy any stolen goods, money or chattels, knowing them to be stolen, with intent to deprive the true owner thereof, shall, upon conviction, be punished as is, or may be, by law prescribed for the larceny of such goods or chattels in cases of larceny."

The defect claimed to exist in the indictment is that it fails to allege that the goods were received by the defendant "with the intent to deprive the true owner thereof," and to sustain this contention we are referred to the cases of *State* v. *Bills,* 118 Ark. 44, 176 S. W. 114; *Kent* v. *State,* 143 Ark. 439, 220 S. W. 814, and *Cochran* v. *State,* 169 Ark. 503, 275 S. W. 895. The opinion in the Bills case recites the indictment which in effect charges that the defendant did unlawfully, feloniously and knowingly receive certain meat, the property of a railway company, "all of which property had prior to the said time been stolen, and the said person named in the caption hereof, at the time of receiving and taking said personal property into his possession, well knew that the same had been stolen, against the peace and dignity of the State of Arkansas." The court noted that the of-

fense charged was a purely statutory one, an essential element of the offense being that the stolen property was received "with the intent to deprive the owner thereof," and, as the indictment under review wholly failed to charge this element, that it was fatally defective and should have been so held on demurrer.

In *Kent* v. *State, supra,* the indictment considered was one for embezzlement. It was contended that the indictment was insufficient for the reason that it did not allege that the property was embezzled "with intent to embezzle or convert to his own use." The court held that the indictment was sufficient for the reason that the word "embezzle" used in the indictment conveyed the idea of the intent to convert to his own use.

In *Cochran* v. *State, supra,* the opinion did not set out the indictment, but the court stated that the indictment copied in the transcript failed to contain an allegation that the goods were received by the defendant "with the intent to deprive the true owner thereof." Following the rule announced in *State* v. *Bills, supra,* the court held the indictment fatally defective.

The indictment we now consider, however, is not similar to the indictments held to be bad in the Bills and Cochran cases. It does contain the allegation that the defendant "received into his possession two hogs, property of Lonzo Hegwood, knowing at the time that then and there said hogs had lately before been stolen, taken, and carried away with the unlawful, wilful, and felonious intent to deprive the true owner of his property aforesaid, * * *." The appellant contends that the allegation relative to the intent refers to the original larceny and not to the defendant's receiving the property.

Section 3014 of Crawford & Moses' Digest provides in effect that no indictment is insufficient, nor the proceedings thereunder affected, by any defect "which does not tend to prejudice the substantial rights of defendant on the merits." We are of the opinion that the indictment involved in the case at bar, while perhaps inaptly drafted, is sufficient, and that appellant's interpretation of the indictment is not the only one to which it is susceptible. The expression contained in the indict-

ment "* * * with intent to deprive the true owner of his property" refers both to the felonious taking and the felonious receiving and while it is not couched in the exact language of the statute it does carry with it the exact meaning. Certainly, it was sufficient to apprise the defendant of the nature of the crime so that he might adduce evidence as to the honesty of his purpose in receiving the stolen hogs, and this he did. The trial court instructed the jury on that phase of the case in the following language: "I charge you that if you find that the defendant purchased the hogs in question in good faith, having no knowledge that said hogs had been stolen, even though they had been stolen, then you should acquit the defendant."

The appellant contends for a second ground for reversal that the trial court abused its discretion in overruling his motion for a continuance. It was alleged in this motion that the case was set for trial in defendant's absence of which fact he was ignorant until the afternoon of September 21 (Monday) and on the following morning (September 22, Tuesday) he caused subpoenas to be issued for his witnesses and placed same in the hands of the sheriff, which were returned unserved as to Charles Aufderheide, Harvey Varnell and Dick Borger; that Aufderheide and Varnell had left for California three weeks prior to defendant's knowledge that the case was set for trial and that Aufderheide and Varnell were material witnesses on behalf of defendant.

The indictment was returned by the grand jury on the first day of June, an adjourned day of the March term of court, preceding the trial on September 22, 1936. There is no contention made that from the date of the indictment to that of the trial the defendant was in jail and the inference to be gathered is that he was not. On the presentation of the motion no evidence was offered by the defendant tending to show any diligence on his part in an effort to obtain the presence of his witnesses. The trial court stated to the attorney that the case was first set for trial in June and that, on September 21, it was reset for the following day, September 22, "in the

presence of your client.'' The court denied the motion on the ground that proper diligence had not been shown. We think there was no abuse of the court's discretion which would amount to a denial of justice. The matter of allowing a continuance rests within the sound discretion of the court, and the burden is upon the defendant seeking a continuance because of absent witnesses to show that he used diligence to secure their attendance at the trial. The cases cited by appellee are ample authority to support the action of the trial court. *Adams* v. *State,* 176 Ark. 916, 5 S. W. (2d) 946; *Edwards* v. *State,* 180 Ark. 363, 21 S. W. (2d) 850; *Birmingham* v. *State,* 192 Ark. 1095, 96 S. W. (2d) 773.

Objection was made to instruction No. 1 given by the court which followed substantially the language of the indictment and the same was made as to its incorrectness as is advanced in support of the contention that the indictment is defective. What we have said with respect to the indictment is applicable to the instruction complained of which was a substantial statement of the law.

It is lastly contended that the evidence was not legally sufficient to sustain the verdict and that the testimony upon which the appellant was convicted was given by an accomplice, one Glenn Phillips, which testimony was uncorroborated. Attention is called to § 3181 of Crawford & Moses' Digest which provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the crime. We think that there is some evidence tending to establish the contention of appellant that Phillips was an accomplice, but appellant contented himself with the request for an instructed verdict on the whole case and did not ask the trial court to instruct on the statute, *supra.* If appellant had desired an instruction on the evidence of the accomplice, it was his duty to make such request of the court and as he failed to do so it is too late to complain on appeal. *Lowmack* v. *State,* 178 Ark. 928, 12 S. W. (2d) 919.

The rule is well settled that the evidence adduced at a trial will, on appeal, be viewed in the light most favorable to the appellee and if there is any substantial evidence to support the verdict of the jury, it will be sustained. Our view of the evidence is that it is ample to sustain the larceny of the hogs and appellant's guilty knowledge of the same at the time he obtained possession of the stolen property. The only inference to be drawn from this testimony is that it was appellant's felonious intent to deprive the owner of his property. The testimony tending to support the verdict, together with the reasonable inference to be drawn from it, is to the following effect: on the evening of the date alleged in the indictment Borger appeared at the home of his brother-in-law, Glenn Phillips, in an automobile and invited Phillips and his wife to go with him for a ride to Avoca. Mrs. Phillips wished to visit her sister there. Accordingly, she and her husband left with Borger in the automobile. The hogs appear to have been in a compartment in the back of the automobile which was a Ford coupe and were discovered shortly after they left Phillips' home by reason of their odor and the noise they made. Before reaching the village of Avoca they stopped and waited at a hollow remaining there until appellant came in a half-ton Ford truck. They reached this hollow after dark and how they spent the night is not disclosed by the evidence, but early on the next morning appellant arrived with his truck and purchased the hogs from Borger for the price of $10. In the conversation between appellant and Borger at that time, appellant learned that the hogs were the property of Lonzo Hegwood and as a reason for not paying more than $10 appellant said that as they were "hot hogs" the risk would not justify a greater price. This, in effect, is the substance of the testimony given by Mrs. Glenn Phillips. It was proved by other witnesses that on the day appellant received the hogs, or the following day, he carried them to Joplin, Missouri, and sold them there. Hegwood happened to be in Joplin at that time and discovered his hogs at the market. He was informed by the purchaser that he had bought the hogs from the appellant. Appellant at

that time was still in Joplin and Hegwood found him and he then told Hegwood that he had bought the hogs from some boys early that morning, but who they were he did not know. He stated that Hegwood could take the hogs, but that he (the appellant) would be a big loser. Shortly after the recovery of the hogs by Hegwood, he sold them for $30.

The above summary of the testimony and its effect ignores the testimony of the alleged accomplice, Glenn Phillips, and is sufficient to support the verdict. The judgment of the trial court is, therefore, affirmed.