CURTIS SMITH v. VICTOR URBAN, SUPERINTENDENT STATE PENITENTIARY

5390                                                434 S.W. 2d 283

Opinion Delivered December 9, 1968

*James M. Barker* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

LYLE BROWN, Justice. Curtis Smith was given a life sentence, having been found guilty of being an accessory to the murder of a filling station attendant. Robbery was alleged to have been the motive of the attack. There was no appeal. The matter is here on collateral attack pursuant to our Criminal Procedure Rule No. 1. The trial court refused relief and the defendant appeals. The point determinative of the appeal is Smith's contention that the State failed to disclose evidence favorable to him and which would have been material to his defense. The trial court specifically found there had been no suppression.

Some six weeks after the crime, M. C. Talley became a prime suspect. Deputy Constable B. C. Courson of Ashley County, accompanied by the prosecuting attorney, went to Monroe, Louisiana, to interview Talley, who was in jail. He gave a detailed and written confession. He stated that he was *the only participant.* He related that he went to the filling station alone and

that after the crime he ran and walked all the way to his home in Hamburg; and that he caught a bus the next morning and went to Monroe.

Some few months thereafter Talley repudiated the Monroe confession. His second statement still admitted his participation in the crime but the significant change from the Monroe statement was that he implicated appellant Curtis Smith. Allegedly, Smith picked up Talley in Crossett and drove him to the scene of the crime at Hamburg, parking by the side of the service station; that Talley gave most of the money to Smith; and that Smith drove him away from the station.

In December 1965, Smith was tried and Talley was a principal witness for the State. Again Talley implicated Smith as an accessory. During the post-conviction hearing at the trial level, Smith's attorney asserted that he had no personal knowledge of the Monroe confession, that being the confession in which Talley asserted that he committed the crime alone. On appeal, counsel for Smith contends that the failure of the State to make available to him the Monroe confession amounts to a suppression of evidence; and that the confession would have been valuable in cross-examining Talley at Smith's jury trial, particularly in that it would have been damaging to Talley's credibility. It should be noted (1) that there is no charge of bad faith concealment, and (2) Smith's counsel does not contend he sought and was denied access to the statement. No evidence was introduced tending to show that Smith's counsel even knew of the existence of the Monroe statement as of the time of Smith's trial.

The question of concealment, or nondisclosure, of evidence by the prosecution has been the subject of considerable discussion in case law of the past decade. We shall refer to four such cases.

*Brady* v. *Maryland,* 373 U.S. 83 (1963). After

Brady was convicted of murder in a state court he learned of an extrajudicial confession of his accomplice wherein the accomplice admitted the homicide. That confession was not made available to Brady, notwithstanding his counsel had asked in advance of trial to examine the accomplice's extrajudicial statements. The court held that the suppression amounted to a violation of the due process clause of the Fourteenth Amendment. The United States Supreme Court said:

"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution."

*Giles* v. *Maryland*, 386 U.S. 66 (1967). Factually this case is quite different from ours. We refer to it as another case which condemns the withholding by the State of records beneficial to the accused and the denial of the petitioner's request to examine statements given by the prosecuting witness prior to trial which were contradictory of her later testimony. In *Giles* the "suppressed evidence" went to the credibility of the prosecuting witness and was declared to be important to the outcome of the case.

*United States* v. *Wilkins*, 326 F. 2d 135 (1964). After conviction for robbery in a state court, petitioner's counsel discovered the existence of two witnesses which would have been helpful to the defense. Sometime before the trial, those two witnesses had been called by the police to headquarters to identify the defendant. They replied that petitioner was not one of the men they saw at the scene of the crime. Of course the State did not use those witnesses, nor did it reveal them to the defendant. Petitioner was convicted on the testimony of the store manager and another identifying witness. This case differs from *Brady* in that here the petitioner never requested the disclosure of evidence

from the prosecution; but in *Wilkins* the Court said that *such a request is not an indispensable requisite to establish the duty of disclosure.*

*Petition of Wright,* 282 F. Supp. 999 (W.D. Ark. 1968). Judge Miller's holding in that case is in harmony with the reasoning in *Wilkins.* Wright was convicted of rape in the Circuit Court of Sebastian County. The victim lost her purse on the night of the attack. After the conviction but before the presentation of Wright's motion for new trial, the purse was found under a house in which another rape suspect had lived. The purse was immediately delivered to the police. At least ten days before the overruling of the motion for new trial the finding of the purse was made known to the prosecuting attorney. Those findings were not revealed to Wright's attorneys or to the trial court. The existence of the "suppressed evidence" was not known to Wright's attorneys until after this court had affirmed the conviction, so Wright's only avenue for relief was by a petition for a writ of habeas corpus. In deciding that Wright's petition should be granted, Judge Miller made this analysis of the law:

> "Fairness is a requirement of due process. In United States ex rel. *Meers* v. *Wilkins* (2 Cir. 1964, 326 F. 2d 135, the court discussed the constitutional right to the revelation of material evidence to assist the defense, and outlined the prosecuting attorney's duty in that regard. At page 136 the court said:

> " 'The law has been established since *Mooney* v. *Holohan,* 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed. 791 (1935), that the conduct of state prosecuting officers may be grounds for finding a defendant's right to a fair trial violated and to authorize the federal courts to grant writs of habeas corpus.'

> "Whether or not a prosecuting attorney in a criminal case must disclose evidence in his posses-

sion favorable to the accused depends on many factors, and a case-by-case judgment must be made.''

We hold that the circumstances of this case dictate that the Monroe confession of M. C. Talley should have been made available to Curtis Smith's counsel. It certainly would have been material in the cross-examination of Talley. Not only could it have cast light on his credibility but it could well have been important to the jury in passing on the guilt or innocence of Smith. We do not have the complete trial record in the case of *State* v. *Curtis Smith;* however, the State's brief concedes that ''Talley testified on behalf of the State and implicated Smith as an accessory to the crime.'' Certainly Talley's testimony was introduced to bolster the State's theory that Smith was guilty of the charge. Now if the jury had been informed of Talley's Monroe statement, it could have raised a reasonable doubt of Smith's guilt. Certainly we cannot say Talley's credibility was unimportant to the outcome of the case.

Other circumstances should be mentioned because many factors enter into a determination of the duty to disclose. That is because every case must rest on its own particular facts. Smith was a pauper and was described by one doctor as having borderline mentality, the latter of course affecting his ability to cooperate with counsel; Smith claimed to have had very little education; the court-appointed attorney did not have the financial facilities possessed by the State to make investigations; Attorney Barker served temporarily as counsel at arraignment and for a short period thereafter; and he was then relieved but was again appointed approximately one week before the trial.

The petition for discharge is granted, but of course the State may, if it so elects, proceed with a new trial on the charges contained in the information.