## O. H. Cooper v. State of Arkansas

5-5404

438 S.W. 2d 681

### Opinion Delivered March 17, 1969

[Rehearing denied April 21, 1969.]

*Robert W. McCorkindale* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Asst. Atty. Gen. for appellee.

JOHN A. FOGLEMAN, Justice.    Appellant seeks reversal of his conviction of the crime of malicious injury to graves or monuments.    The charge is based on Ark. Stat. Ann. § 41-3706 (Repl. 1964).    Under this act the wilful and malicious destruction, injury or defacement of any grave or monuments or the wilful and malicious removal or destruction of a monument constitutes a felony.    Appellant argues three points for reversal. They are:

1.    Error in refusal of his motion for directed verdict;

2.    Error in modifying his requested instruction No. 3 and in giving the instruction as modified;

3.    Error in denying a motion for new trial.

In reviewing the sufficiency of the evidence as against the motion for directed verdict, we must view it in the light most favorable to the state.

Terry Pillow testified that he had been familiar with the cemetery known as the Adderholt Cemetery for 10 or 15 years and had known of its location for 35 or 40 years. He said that the graves of some of his relatives were

definitely marked by monuments. According to him, some of the monuments were fieldstone bearing names and dates and others were rocks piled over the grave with initials and dates carved on the top rocks. He testified that a dwelling house had been built within 12 or 15 feet of the graves of his relatives. On his visit to the graves preceding that when he saw the house, there was still a fence around the graves. He estimates that there were from 20 to 35 graves in the graveyard all of which were marked with tombstones. He recalled that the graves of the Baker family were marked with marble tombstones. He found the fence in place shortly before appellant bought the property which included the graveyard.

Mrs. Ora Belle Baker McGaughey testified that gray marble tombstones were placed on the graves of her grandparents but that the tombstones were gone at the time of the trial.

Mr. Richard Shipman who purchased the land including the graveyard along with appellant testified that their deed was made December 22, 1965. After the purchase of the land, he and Cooper walked over it and found evidence of the cemetery in the form of marble tombstones bearing the name of Baker and covered graves. Shipman received a call through which he was advised that there was a graveyard on the land. He relayed this information to Cooper. It was later verified by the person from whom they purchased the land. Shipman also described fieldstone and flat sandstone standing 18 inches off the ground so as to enclose what appeared to be graves. He told Cooper that they should put a small fence around the cemetery if they could establish the boundary lines, saying that they couldn't afford to molest the cemetery. Shipman returned to the site after a road was constructed and found that the two marble tombstones were gone. The graves appeared to be intact at that time. Shortly, thereafter, Shipman sold his interest in the land to Cooper. He returned to

the site later and saw a dwelling house within 10 or 12 feet of the place he had seen the tombstones and graves.

Herbert Terry told of going to the cemetery about the time a road was being constructed by appellant. He stated that he asked Cooper to leave the rock where his relatives' graves were. At that time the rocks were still in place but the Baker monuments were not. He returned to the site in June or July of 1968 and the rocks on his relatives' graves had disappeared. Cooper advised Terry that the rocks were in the footings where he was building a house. According to Terry the house was sitting where the graveyard had been and the driveway was the cemetery. Terry claimed that the headstone of his grandfather's grave was jerked up twice during the construction by Cooper and that he and his wife had replaced it both times. He found it removed a third time but did not replace it because it was broken in two or three places.

Pat McEntire testified that Cooper employed him to haul some rock that was piled at or near the site of the cemetery. The rock was put under the floor of Cooper's brother-in-law's house for fill.

Charles Youngblood stated that he was hired by Cooper to level some ground at or near the location of the cemetery. He stated that Cooper picked up some flat sandrock stacked to make what appeared to be a tomb and put it in his pickup truck. Youngblood had previously refused to haul the rock off and told Cooper that it appeared to be tombstone rock. He testified that Cooper told him they were graves.

Tom Bearden was employed by Cooper to install the plumbing in the house built near the graves. When he first went to the site he saw two stacks of rocks which looked to him like graves. Later he noticed they were gone. Bearden engaged in a conversation with Cooper and one L. E. Stewart with reference to the

choice of a shallow or a deep septic tank for the house being constructed. He could not recall the particular statements made but stated that a decision was reached to use the shallow tank in order to avoid digging in any graves in the cemetery.

George Lowe was a roofer employed by Cooper to roof the house built near the cemetery. He noticed three or four graves near the house. Lowe saw L. E. Stewart using a backhoe in Cooper's presence to dig for the installation of a septic tank. According to Lowe, a trench for the septic tank line was being dug across the graves, and he and his son went to the trench where they could see the dark form of a grave six feet from the foundation of the house. Lowe heard Herbert Terry make an angry protest to Cooper and heard Cooper say if Mr. Rockefeller could get by with it so could he.

This evidence was certainly sufficient for a jury to find a guilty verdict if the testimony was accepted at face value.

Appellant requested the following instruction to the jury:

"The three essential facts to constitute the crime with which the defendant is charged are:

1. That he committed the acts charged in the indictment;

2. That he did so wilfully;

3. That he did so maliciously.

You are further instructed that word 'maliciously' means the doing of an act in a manner showing a heart regardless of social duty and fatally bent in mischief. It means an act done intentionally and with evil intent, without just cause or excuse, or as a result of ill-will."

The circuit judge refused the instruction as requested but over appellant's objection gave the following instruction:

"The three essential facts to constitute the crime with which the defendant is charged are:

1. That he committed the acts charged in the indictment;

2. That he did so wilfully;

3. That he did so maliciously.

The jury is instructed that a malicious act is a wrongful act intentionally done without legal justification or excuse. It is an unlawful act done wilfully or purposefully, the evidence of which may be inferred from the acts committed or words spoken."

The gist of appellant's contention with reference to the instruction given seems to be that it does not sufficiently define the word maliciously as used in the statute.

This court had occasion to consider the meaning of this word in a case wherein the sufficiency of an indictment for burglary was attacked because the statutory word "maliciously" was not used. *Shotwell* v. *The State*, 43 Ark. 345. In treating this question this court said:

"In the use of the word 'maliciously' in the statute we cannot presume that the legislature intended that malice towards the owner of the house entered, or toward any one else should become an element in the intent with which the breaking is done. The word must be understood from its *context* to be intended in its restricted legal signifi-

cance which implies 'the intent from which follows any unlawful or injurious act, committed without legal justification.' 1 *Bishop Cr. Law Sec.* 429. It means doing a wrongful act without just cause or excuse. 2 *Bouvier L. Dict.* Malice.

Bishop says that 'maliciously' in an indictment has been adjudicated an equivalent to 'wilfully' in the statute. 'Maliciously' is of somewhat larger meaning than 'willfully,' which in an indictment would not therefore supply the place, it is presumed, of maliciously in the Statute. 2 *Bish. Cr. Pr. Sec.* DC."

We find that the instruction given by the trial court was correct and that the requested instruction was properly refused. The one offered would have been incorrect even under *Gordon* v. *State*, 125 Ark. 111, 187 S.W. 913.

Appellant's assertion of error in the failure to grant a new trial is based upon the argument that the court should have granted his motion because it had been discovered that the testimony of George Lowe was false. The motion asked a new trial on grounds of newly discovered evidence.

In support of the motion appellant offered the testimony of L. E. Stewart, Joe Miller and appellant's attorney, J. Loyd Shouse. They also presented the witness George Lowe.

Stewart testified that Lowe had stated subsequent to the trial that his testimony at the trial was false. Joe Miller who numbered both Lowe and Cooper among his hardware customers stated that Lowe came into Miller's store a week or ten days after the trial when Cooper was present. He overheard parts of a conversation between Lowe and Cooper about the former's testimony. According to him the two went out into the yard where they engaged in some conversation which was continued

when they returned into the store. He heard a discussion between them as to what would be perjury and what would not and advised them to go to appellant's attorney. Miller said that he later saw Lowe and learned that he had not been to the attorney's office as promised. He then asked Lowe why he hadn't been, and Lowe responded that he wasn't going.

Appellant's attorney testified that Lowe and Cooper came to his office about a week after the trial. Cooper advised him that Lowe wanted to make a statement. The attorney testified that Lowe said all his testimony in the trial was false, particularly that part about Cooper's having said that if Rockefeller could tear up a graveyard he ought to be able to do so. He said that Lowe also stated that his testimony about looking down into the excavation for the septic tank and seeing graves was false. When Lowe told Mr. Shouse that Bill Doshier, the prosecuting attorney, made him testify as he did, Shouse said that he didn't believe him and refused to write up a statement about what Bill Doshier did. Mr. Shouse said that he told Lowe that he would not write out any statement for him because of his disbelief of the statement that the prosecuting attorney had encouraged him to testify falsely. Mr. Shouse suggested that Cooper and Lowe return the next day but Lowe never came back.

Lowe testified that his testimony at the trial was true. He said that he was asked to go to Shouse's office by the appellant in order to see if there wasn't some way to obtain a suspended sentence or probation. He claimed that Cooper declined to wait until he could talk to the prosecuting attorney. He said that he left the Shouse office after Cooper had insulted him twice. He denied having told Shouse that his testimony was false or that he had followed Doshier's suggestions in testifying. On the other hand, Lowe testified that Cooper had suggested that these were the facts. Lowe's version of the conversation with Miller and Cooper was

that they threatened him with civil suits because of his testimony.

Newly discovered evidence is one of the least favored grounds for motion for a new trial. It is addressed to the sound legal discretion of the trial judge, and this court will interfere only in case of an apparent abuse of discretion or injustice to the movant. The determination of whether the application is in good faith and of the weight and sufficiency of the supporting evidence is within the discretion of the trial judge. In order to justify the granting of the motion, the evidence in support thereof should be clear and satisfactory. *Gross* v. *State,* 242 Ark. 142, 412 S.W. 2d 279.

Impeaching testimony is not sufficient grounds for granting a new trial on the basis of newly discovered evidence. *Philyaw* v. *State,* 224 Ark. 859, 277 S.W. 2d 484. Even if it could be said that there was a recantation on the part of a witness, it is the duty of the trial court to deny a new trial where it is not satisfied that the recanting testimony is true, especially where it involves a confession of perjury. The question whether a new trial shall be granted on this ground depends on all the circumstances of the case including the testimony of the witnesses submitted on the motion for new trial. The answer lies largely within the discretion of the trial court. *Clayton* v. *State,* 186 Ark. 713, 55 S.W. 2d 88.

We cannot say that there was any abuse of the trial court's discretion in this regard.

The judgment is affirmed.

HOLT, J., not participating.