Ronald LEWIS *v.* STATE of Arkansas

CA CR 79-63                              591 S.W. 2d 687

Opinion delivered December 19, 1979
Released for publication January 9, 1980

*Jones & Tiller*, by: *Marquis E. Jones*, for appellant.

*Steve Clark*, Atty. Gen., by: *Catherine Anderson*, Asst. Atty. Gen., for appellee.

JAMES H. PILKINTON, Judge. Appellant was charged with second degree forgery in violation of Ark. Stat. Ann. § 41-2302 (Repl. 1977). The state specifically alleged that on April 2, 1977 Lewis uttered a check which was purported to have been drawn on one Don C. Clark, who had not authorized the appellant's act. After entering his plea of not guilty, and after numerous continuances were granted at the request of both sides, a jury trial was held on February 8, 1979. Lewis was found guilty as charged and sentenced to two years imprisonment.

## I.

Appellant first contends the trial court erred in refusing to grant his motion for a directed verdict of not guilty. We find no merit in this argument. A directed verdict is proper only when no fact issue exists. On appeal this court reviews the evidence in the light most favorable to the appellee and will affirm if there is substantial evidence to support the verdict. *Balentine* v. *State*, 259 Ark. 590, 535 S.W. 2d 221 (1976); *Harris* v. *State*, 262 Ark. 680 at 682, 561 S.W. 2d 69 (1978). In the case before us, we cannot say that no factual issue existed. The trial court was correct in denying defendant's motion for a directed verdict.

## II.

An employee of Brandon Furniture Company in Little Rock testified that on April 2, 1977, appellant made a purchase and gave her the check in question for $41.20 payable to Brandon Furniture Company. At the time, appellant purportedly held himself out to be Don C. Clark. The Brandon employees were suspicious at the time, but having no poisitive proof, took the check nevertheless. However, they did take special note of the appearance and description of the individual involved.

A little over a month later appellant appeared at the John Tucker Warehouse in Little Rock. Teresa Mukerjea, the employee at Brandon with whom appellant had dealt before, was then working for Brandon's at the Tucker warehouse. She recognized appellant, and called the police after he had left the warehouse. The police arrested appellant a short time later. He now claims on appeal that his trial was not fair because the state withheld certain original statements made by witnesses from appellant's discovery. We find no merit in this argument. It is undisputed that Brandon Furniture Company employees Teresa Mukerjea and Tommy Claussen gave written statements to the police with regard to the check in question. Each witness wrote out the statement in long hand. A police department secretary then typed copies of each statement. Appellant introduced both the handwritten statements, and the typed copies, into evi-

dence at the trial as Defendant's Exhibits 1 through 4.

During the discovery period, defense counsel received copies of the typewritten statements via the "open file" policy of the Pulaski County Prosecuting Attorney's office. The record is otherwise silent on the matter, but it was apparently only during the cross-examination of Officer Baer, who took the statements in the first place, that both the defense counsel and the state's attorney learned that the longhand originals of the statements existed. The typewritten copies of the statements are identical to the handwritten originals except for the fact that in the original statement of Ms. Mukerjea, some words were underlined by her, and this underlining was not shown on the typewritten version. Other than the underlineations, there are no differences whatsoever between the typed and handwritten documents. The wording is exactly the same. Thus no prejudice to the defendant could have occurred under the circumstances. The appellant's argument, on appeal, that what happened constituted a violation of Rule 17.1 of the Arkansas Rules of Criminal Procedure is without merit. Neither does this case fall under the holding in *Williamson* v. *State*, 263 Ark. 401, 565 S.W. 2d 415 (1978) as appellant claims.

### III.

Appellant offered two proposed instructions concerning criminal simulation as defined by Ark. Stat. Ann. § 41-2311. His theory was that the crime of criminal simulation is a lesser offense including a charge of forgery. The language of the commentary which accompanies Ark. Stat. Ann. § 41-2311 (Repl. 1977) (Criminal Simulation) states:

> It [Section 41-2311] is designed to cover the fraudulent simulation of "objects" that are not written instruments within the definition of § 41-2301 (9). Such "objects" include antiques, paintings, and other objects d'art, as well as more common articles.

The commentary, although not legally binding, is highly persuasive in determining legislative intent. *Britt* v. *State*, 261 Ark. 488 at 495, 549 S.W. 2d 84 (1977).

Assuming without deciding that criminal simulation is in fact a lesser included offense of forgery, still appellant in this case would not be entitled to the instructions offered under the facts here. See *Caton & Headley* v. *State*, 252 Ark. 420, 479 S.W. 2d 537 (1972). The principle of law announced in *Caton* was codified in Arkansas Criminal Code, Ark. Stat. Ann. § 41-105 (3) (Repl. 1977) as follows:

> The Court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

See also *Frederick* v. *State*, 258 Ark. 553 at 557, 528 S.W. 2d 362 (1975). In the case before us the defendant-appellant was either guilty of the greater charge or nothing at all. The trial court was correct in refusing both offered instructions on criminal simulation.

## IV.

Appellant's final argument is that he was denied a fair trial below due to his inability to discover the names of persons, or to view additional checks, which were involved in other alleged line-ups. We find no merit whatsoever in this contention. If there were other checks not the subject of the instant charge which appellant was supposed to have written, they were clearly unrelated with the case being tried. Consequently, we are unable to see how the appellant was prejudiced thereby, nor does he so inform us. And, as noted by the trial judge, these alleged "other" check(s) were never referred to by the prosecution, but rather were called to the attention of the jury by the defense on cross-examination. Any resulting prejudice, therefore, was invited, and cannot be raised as an error on appeal. *Strode* v. *State*, 259 Ark. 859, 537 S.W. 2d 162 (1976). Thus appellant is in no position here to argue that his rights under Rule 17.1 and under *Williamson* v. *State*, supra, were abridged.

## V.

This court has carefully considered all points raised by

appellant, but finding no error the judgment of the Pulaski County Circuit. Court must be affirmed, and the conviction upheld.

Affirmed.

HOWARD, J., and PENIX, J., dissent.

GEORGE HOWARD, JR., Judge, dissenting. I am unable to concur with the majority in affirming appellant's conviction for it is plain, from a review of the record, that the State failed to comply with Rule 17 of the Rules of Criminal Procedure and the pronouncement of the Arkansas Supreme Court in *Williamson* v. *State*, 263 Ark. 401, 565 S.W. 2d 415 (1978) which articulated the duty of a prosecuting attorney when a request for disclosure is made by a defendant.

On February 6, 1978, the defendant filed a rather detailed and comprehensive motion styled "MOTION FOR DISCOVERY, FOR BILL OF PARTICULARS, FOR PRODUCTION OF DOCUMENTS, AND FOR EXCULPATORY EVIDENCE". Among other things, defendant's Motion for Discovery provided:

> 10. The defendant requests the name of each person who has been interviewed by any agency but who the State does not intend to call at the trial of this matter and any statements written or oral given by such persons to any agent of any governmental agency.

> . . .

> 12. The defendant requests that each of the above be considered to be a continuing request and demand and that the State amend its answers to so include such later discovered answers, after the time or its initial response hereto, as may come within the possession, custody or control of the State or by the exercise of due diligence may come within its possession, custody or control.

Rule 17.1 provides:

(d) . . . [T]he prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor.

In *Williamson* v. *State*, supra, our Supreme Court in construing Rule 17.1 emphasized:

1. The State must disclose to defense counsel, promptly upon discovery thereof, any information which tends to negate the guilt of the defendant or that would reduce the punishment.

2. That such information which a party is entitled to must be disclosed in sufficient time to permit defense counsel to make beneficial use thereof.

I submit that an application of these rules to the relevant factual matters indicates a reversal of appellant's conviction. Rule 17.1 (d) and *Williamson* v. *State*, supra, incorporate the due process requirement that evidence favorable to a defendant on issues of guilt or punishment be disclosed by the State. Appellant's entitlement to disclosure may not be frustrated by what the State deems relevant or material to the issues in the proceedings. *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); *Giles* v. *Maryland*, 386 U.S. 66, 87 S. Ct. 793 (1967); *Williamson* v. *State*, supra; *Smith* v. *Urban*, 245 Ark. 781, 434 S.W. 2d 283 (1968); *Murchison* v. *State*, 249 Ark. 861, 462 S.W. 2d 853 (1971).

The prosecuting attorney, in his opening remarks to the jury, made the following statement:

"We also have a Detective Ken Baer, who is the individual who investigated this checking account. *He will tell you what he found out about the validity of the checking account.*" (Emphasis added.)

However, when Officer Ken Baer was called as a wit-

ness by the State, only the following testimony was elicited pertaining to the extensive investigation the officer conducted regarding the account:

Q. . . . [D]id you have occasion to investigate a checking account which was in the name of Don Carlton Clark at the First National Bank here in Little Rock, Arkansas?

A. Yes, sir, I did.

Q. All right. I hand you what is marked State's Exhibit No. 1. Did you investigate that particular check?

A. Yes, sir, I did.

Q. Did you have occasion to check out the information given there on the account holder?

A. Yes, sir.

Q. All right. Did you check out the address?

A. Yes, sir.

Q. What did you discover?

A. The address of 4201 West Twenty-ninth is a vacant lot.

Q. Was there any indication that a house had ever been there?

A. No, sir.

Q. All right. Did you check out the UALR identification number on there?

A. Yes, sir.

Q. What was the result of that?

A. I don't remember the individual's name it was listed to at this time.

Q. Was it male or female?

A. I believe it was female.

Q. Was it not Don Carlton Clark's?

A. It was not Don Carlton Clark, no, sir.

Q. How about the State's driver's license number on there? Did you check that out?

A. Yes, sir. It listed to Don Carlton Clark.

Q. And where did you determine Don Carlton Clark to live?

A. He lives in Southern Arkansas. I'm not —

Q. He does not live in Little Rock?

A. He does not live in Little Rock.

Q. Did your investigation reveal any other Don Carlton Clarks except the one from Southern Arkansas?

A. No, sir, it did not.

On cross-examination, Officer Baer gave the following testimony which was relevant and crucial to appellant's claim of innocence and, according to counsel for appellant, disclosed for the first time:

Q. Detective Baer, did during your investigation you check with the First National Bank herein concerning Don C. Clark's account?

A. Yes, sir.

Q. Did you find such an account?

A. Yes, sir.

Q. Was that the account as stated on the check as you see it there?

A. Yes, sir. We investigated numerous checks on this account.

Q. Now, were all of the checks on that number account?

A. On this specific account?

Q. Yes.

A. Yes, sir. We investigated — I don't know how many. There were checks all over the city on this account.

Q. Okay. Did you see an account in the name of Don Clayton Clark?

A. Yes, sir, I believe there were checks in that account also.

Q. Okay. Did you see an account in the name of Donald C. Clark?

A. I don't recall, sir. This has been a long time ago.

Q. Did you check any other banks?

A. I could have at the time. I just don't recall, sir.

Q. Okay. Based on your investigation, did you find that there were other accounts of Donald C. Clark, of Don C. Clark?

A. There may have been, sir. Like I say, there were so many of these checks. There were two or three law enforcement agencies investigating them at the same time.[1]

---

[1] On June 8, 1977, Detective Ken Baer received the following communication from the Arkansas State Police which has been designated as defendant's exhibit number 6:

The testimony of Officer Baer relating to the numerous checks "all over the city" and other bank accounts in the names of "Donald C. Clark", "Don C. Clark" and "Donald Clayton Clark" was not only relevant and beneficial in enabling appellant in locating other signatures from checks and bank records that would have been helpful to the State Police in seeking to compare and verify appellant's handwriting on the forged check, but this information could have been equally as beneficial in assisting appellant in securing witnesses to see if they could identify appellant as the party who uttered the checks they received. These persons might have been in a position to offer a description of the person or persons whom they dealt with. Moreover, appellant could have taken advantage of the discoveries made by other law enforcement agencies that were investigating the same check scheme. Appellant was denied this information because the State failed to disclose this information although appellant's motion was filed approximately one year preceding appellant's trial.

Appellant's counsel emphasized in his motion for a new trial that the prosecuting attorney's office, on February 6, 1979, at approximately 9:00 p.m., only advised him of the name of the police officer who had investigated the "numerous checks". However, appellant's trial was already scheduled for February 7, 1979.

It is unlikely that Officer Baer concealed from the prosecuting attorney's office the discoveries he made relating to the several bank accounts, the numerous checks and the fact that other law enforcement agencies were involved. Moreover, appellant's motion for disclosure sought information which the State could supply by "the exercise of due diligence."

---

Dear Sir:

E-1 is a check of Don Carlton Clark, #282.

I am unable to make a positive identification with the handwriting on the check marked E-1 with the handwriting submitted of Ronald Lewis.

I am unable to compare the printing on the face of E-1 with the script submitted of Ronald Lewis.

I am returning the questioned and known material at this time.

For the reasons herein discussed, I respectfully dissent.

I have been authorized to state that PENIX, J., joins in this dissent.